```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEVEN DOUGLAS COLEMAN,                    :
                                           :     18 Civ. _____
                    Plaintiff,             :
                                           :     COMPLAINT
        -against-                          :
                                           :
MARIA KIM GRAND,                           :
                                           :
                    Defendant.             :
------------------------------------------------------------------X
```

Plaintiff, Steven Douglas Coleman ("Plaintiff"), by his attorneys Nesenoff & Miltenberg, LLP, and Agee Owens & Cooper (*Pro Hac Vice Pending*) as and for his Complaint (the "Complaint"), respectfully alleges as follows:

## THE NATURE OF THE ACTION

1. This action is brought by Plaintiff to recover, *inter alia*, damages caused by Defendant's libelous communication of knowingly false statements in numerous emails to the parties' professional colleagues, friends, and close associates. Upon information and belief, Defendant attached a defamatory letter (the "Letter") to the aforementioned emails, which contained numerous false statements alleging criminal sexual acts and sexual harassment on the part of Plaintiff.

2. The Letter contained false information and unsubstantiated allegations, including untrue statements alleging Plaintiff engaged in a pattern of abuse, sexual harassment and sexual acts without the consent of Defendant. The statements contained in the Letter were false, abusive, vulgar, intentionally misleading and damaging to the Plaintiff, and continue to cause damage to Plaintiff. The Letter was sent to numerous members of the parties' shared profession,

the music industry and, as such, caused Plaintiff to lose numerous significant professional opportunities.

3. Plaintiff is a private citizen who is neither a politician nor a celebrity.

4. The Defendant's actions were malicious in nature, taken solely to damage Plaintiff's reputation and career.

## JURISDICTION AND VENUE

5. This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

6. This Court has personal jurisdiction over Defendant on the grounds that she resides within the Eastern District of New York.

7. The venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant resides in this judicial district.

## PARTIES

8. Plaintiff, Steven Douglas Coleman is a resident of Lehigh County, Pennsylvania.

9. Defendant, Maria Kim Grand is a non-citizen resident of Kings County, New York, and is present in the United States on an artist work visa.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

10. Plaintiff met Defendant in New York City on May 5, 2009, when Plaintiff, an accomplished saxophonist, was hosting a workshop at the Jazz Gallery. Defendant, an aspiring saxophonist, attended the workshop as a fan of Plaintiff's music. Defendant proceeded to gain

valuable professional experience, in the form of education, training and employment opportunities from her relationship with Plaintiff.

11. On or about January 3, 2011, Defendant initiated numerous flirtatious correspondences with Plaintiff, proactively seeking future sexual interactions.

12. On or about June 2, 2011, the parties began to engage in a mutually consensual sexual relationship that lasted until approximately late September 2016. Both the first and last sexual encounters were initiated by Defendant.

13. On or about July 7, 2011, Defendant stated in an electronic chat that she was using sexual intimacy to get Plaintiff to give her "musical information".

14. On or about April 4, 2012, Defendant suggested, via email, engaging in a three-way sexual relationship with Plaintiff and Plaintiff's wife, and further suggested that she spend a month in Plaintiff's home to see what would happen in the relationship.

15. Similarly, on or about August 22, 2011, Defendant suggested, via text message, engaging in a three-way sexual relationship with Plaintiff and another woman who was the Plaintiff's friend.

16. On or about September 30, 2011, Defendant stated, in a Skype electronic message, that she had been lying to both her aunt and her mother that Plaintiff forced her to have sex with him, in order to make herself look innocent.

17. On or about February 14, 2012, Defendant sent Plaintiff a message stating that she was attracted to him from the beginning, that she wanted to get into a relationship from the beginning, and that Defendant deliberately "trapped" the Plaintiff because of what she could learn from him, and that she could express her sexual nature (i.e., "freakdom[1]") freely.

---

[1] "Freakdom" is a slang term referring to the release of one's sexual inhibitions. The term was used by Defendant in her message to Plaintiff, and is therefore quoted herein.

18. On or about February 21, 2012, at Defendant's request, Plaintiff agreed to sponsor her for an O-1 artist work visa.

19. In or about September of 2013, Plaintiff and Defendant had an argument and a temporary break-up. After a brief pause in their relationship, the relationship resumed and thereafter continued off and on until 2016.

20. Throughout 2014, Plaintiff and Defendant maintained an ongoing consensual sexual relationship, in which each of them would occasionally initiate sex.

21. On or about May 29, 2015, at Defendant's request, Plaintiff again agreed to sponsor her for an O-1 artist work visa.

22. In or about late 2015, Plaintiff and Defendant actively engaged in frequent consensual sexual intercourse. Both parties would initiate sex from time to time.

23. In or about August 2016, Defendant told Plaintiff's girlfriend that Plaintiff was a misogynist as well as an abuser, and that Plaintiff would never leave his wife for Plaintiff's girlfriend because Plaintiff did not leave his wife for Defendant.

24. On or about September 16, 2016, Defendant propositioned Plaintiff for sex and then asked Plaintiff not to tell her then-boyfriend about the sex, which was described as a "birthday present" for Plaintiff.

25. On or about September 21, 2016, the Parties engaged in sexual intercourse for the last time. The encounter was consensual and was initiated by Defendant, as described in the paragraph immediately preceding the instant one.

26. On or about November 30, 2016, Defendant sent a letter to Plaintiff's manager stating that she no longer wanted to work with him.

27. After November 30, 2016, Plaintiff and Defendant stopped communicating and only saw each other a few times at concerts or private events.

28. On or around December 6, 2016, Plaintiff sent a text message to Defendant's girlfriend stating that Plaintiff fired her from his ensembles, when in fact, Defendant had emailed Plaintiff's manager on November 30, 2016, to resign from all future engagements.

29. On or about May 17, 2017, after approximately five months without extended communication, Defendant stated in an email to Plaintiff that he sexually harassed her for three years. She further stated that she was not in a position to deal with it publicly at the time, but that someday she would be, and that she did not "... [i]ntend on being quiet." (Ex. A).

30. In August 2017, Defendant became a founding member of the We Have Voice Collective, which, upon information and belief, was spawned by the #MeToo movement and is a group of female musicians supporting other female musicians who speak out against sexual misconduct in the industry.

31. During October 2017, Defendant made veiled threats against Plaintiff in Facebook posts (Ex. B).

32. On October 25, 2017, Defendant sent Plaintiff the following text message:

> [10/25/17, 9:11 PM] Maria Grand: I will say what I want to say when and however I want. And yes, you will be held accountable for your actions, one way or the other, especially after you would send me these threatening texts.

33. On November 6, 2017, Defendant emailed Plaintiff's now-estranged wife indicating she was "going to be public" about her relationship with Plaintiff. Defendant subsequently published her false accusations of sexual harassment against the Plaintiff, and later forwarded the Letter to the Plaintiff's estranged wife, identifying the Plaintiff by name in the forwarded email.

34. On or about November 14, 2017, Defendant sent an email with the Letter attached, to approximately thirty individuals in the parties' shared music community. The recipients included music industry business professionals. In the email and attached Letter, Defendant falsely accused Plaintiff of criminal sexual acts and sexual harassment. Although she did not include his name, other facts, and statements in the publication made it crystal clear to the recipients that she was referring to Plaintiff (Exs. C, D). Defendant requested in her email and letter that none of the recipients forward the email and attached Letter, in an obvious attempt to keep the knowledge of the accusations from the Plaintiff, thereby denying Plaintiff an opportunity to defend himself.

35. On or about November 18, 2017, Defendant sent an email to Plaintiff's estranged wife with the Letter attached, after previously informing Plaintiff's estranged wife the Letter was describing Plaintiff. The Defendant specifically mentioned the Plaintiff by name, and requests of Plaintiff's estranged wife to keep their communication from the Plaintiff, thereby denying Plaintiff an opportunity to defend himself. Defendant's request clearly demonstrates that the Defendant knew that her accusations about the Plaintiff were false, and the Defendant specifically was attempting to keep the knowledge of the accusations from the Plaintiff, thereby denying Plaintiff an opportunity to defend himself. This attempt to keep the accusations from the Plaintiff was successful for a period of approximately two months.

36. Upon information and belief, Defendant sent other similar defamatory emails after November 14, 2017.

37. In all of the written communications Defendant sent defaming Plaintiff, Plaintiff's identity was so thinly veiled that all recipients knew exactly who was being accused, as the recipients knew both parties well. The recipients also knew the nature of the parties' relationship, Defendant's meeting Plaintiff at his workshop and Plaintiff's providing numerous

6

employment opportunities in the form of musical "gigs" playing alongside Plaintiff at his performances. Separately, Defendant explicitly informed some recipients, including Plaintiff's estranged wife, that the defamatory communications were about Plaintiff. Other recipients, including Plaintiff's manager and another colleague, were able to immediately recognize Plaintiff as the person described in the Letter.

38. Defendant's email, along with the attached Letter, was re-published (forwarded) to many other people.

39. Although Plaintiff was unaware of the defamatory emails and letters at the time, the damage to his reputation was immediate. People in his industry/musical community stopped talking to him, and other musicians canceled on gigs that he had hired them for. The cancellations caused Plaintiff to find last-minute substitute musicians (who were not as capable as the original musicians), rearrange flights, concerts, performance riders, bookings and also rearrange and recopy musical scores. Also, as the previous musicians who canceled had been present on the released recordings, the Plaintiff was forced to complete gigs with an ensemble different from the advertised ensemble listed on the released recordings.

40. On January 11, 2018, Plaintiff discovered that Defendant had published defamatory information about him throughout his professional community as he was notified by his manager, one of the recipients of the email and attached Letter, who immediately recognized Plaintiff to be the unnamed person described in the Letter.

41. Plaintiff reached out to Defendant to request a retraction and an apology. Plaintiff attempted to resolve the matter privately for approximately three weeks, prior to hiring an attorney for the purpose of engaging in private alternative dispute resolution.

42.     Defendant rebuffed or ignored all of Plaintiff's attempts to resolve the matter privately.

43.     On May 1, 2018, Plaintiff attended Defendant's public performance, to which she had invited him and for which he purchased a ticket.  Defendant publicly showed her displeasure with Plaintiff's attendance and had her colleagues remove him from the venue, causing Plaintiff further embarrassment and damage to his professional reputation.

44.     After May 1, 2018, Plaintiff could no longer attend public concerts peacefully and safely.

45.     On or about May 2, 2018, Defendant sent defamatory text messages about Plaintiff to a mutual colleague, wherein Defendant falsely claimed that Plaintiff harassed her and sexually intimidated her at the concert on May 1, 2018.

46.     On or about May 5, 2018, Plaintiff sent out a letter to those whom he believed had received Defendant's defamatory publications, including the Letter, in an effort to clear his name.

47.     Plaintiff has suffered irreparable damage to his professional and personal reputation as the direct and proximate result of Defendant's defamatory statements.

48.     Plaintiff has suffered economic damage to his music performance business, including but not limited to loss of business opportunities and diminished interest of colleagues willing to play with Plaintiff, as the direct and proximate result of Defendant's defamatory published statements.

49.     Plaintiff has endured emotional pain and suffering as the direct and proximate result of Defendant's defamatory statements and the public reaction to them.

50. As the direct and proximate result of Defendant's defamatory publications, Plaintiff has required psychological therapy.

### AND AS FOR A FIRST CAUSE OF ACTION
#### (Defamation of Character by Libel)

51. Plaintiff repeats and realleges the foregoing paragraphs as if fully stated herein.

52. Defendant knowingly published the aforementioned false statements about Plaintiff by sending emails and the Letter, stating that he sexually harassed Defendant and committed criminal sexual acts without her consent, to numerous members of the parties' industry, the musical community. Defendant is aware the published statements are false because the sexual relationship between the parties was consensual, Defendant often initiated sexual encounters, Defendant admitted she was using the intimate relationship to get "musical information", and Defendant threatened to expose Plaintiff in order to generate leverage over him.

53. Defendant published this defamatory information without privilege or authorization. Plaintiff did not know about the publications until two months after they had been made and Defendant threatened Plaintiff that she might make these statements publicly.

54. Defendant published the false statements about Plaintiff, described herein, with malice. Defendant knew, without question, that the statements were false. She threatened plaintiff in an email, texts, and on social media, including the threats "I am letting you know now that I don't intend on being quiet; I don't intend on protecting you; I don't intend on preserving anything for you. I am not going to let this go without speaking up on it" and "you will be held accountable for your actions".

55. Defendant's false publications achieved their desired effect of exposing Plaintiff to contempt, aversion, and vitriol. Plaintiff's personal and professional reputations were damaged as the result of Defendant's defamatory statements.

9

56. Plaintiff suffered economic damages as the result of Defendant's defamatory statements including, but not limited to, loss of employment opportunities and diminished interest of colleagues' willingness to play music with Plaintiff.

57. Plaintiff suffered emotional pain and suffering as the result of Defendant's defamatory statements.

58. Plaintiff is entitled to *per se* damages because the defamatory statements made by Defendant were inherently harmful, in that they addressed sexual morality and professionalism.

59. Plaintiff is further entitled to Actual Damages, Compensatory Damages, and Punitive Damages for Defendant's malicious, defamatory conduct, as Plaintiff has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

   i. This Court's Finding that the information published by Maria Kim Grand was false and defamatory;

   ii. This Court's Finding that Maria Kim Grand published the defamatory statements with malice;

   iii. This Court's Order that Maria Kim Grand issue a written retraction to each and every person to whom she originally published the false and defamatory statements;

   iv. On the first cause of action for defamation, a judgment awarding the Plaintiff damages in an amount to be determined at trial, but in no event less than $500,000.00, plus interest, attorney's fees, expenses, costs, and disbursements, as described below:

   v. This Court's award of *per se* damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vi. This Court's award of Actual and Compensatory damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

vii. This Court's award of Punitive Damages in an amount to be determined at trial, but in no event less than the amount of five hundred thousand dollars ($500,000.00);

viii. Attorneys' fees as against Defendant jointly and severally, in an amount to be determined at trial; and

ix. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues presented herein that are capable of being tried by a jury.

Dated this 9th day of October, 2018

Respectfully Submitted,

By: _____
Andrew T. Miltenberg, Esq.
Nicholas Lewis, Esq.
Nesenoff & Miltenberg, LLP
363 7th Avenue, 5th Floor
New York, New York 10001

-and-

By: _____
Joyce Cooper #30855 *(Pro Hac Vice Pending)*
Michelle Owens #26512 *(Pro Hac Vice Pending)*
Agee Owens & Cooper
2911 Elm Hill Pike STE 2
Nashville, TN 37214