UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN DOUGLAS COLEMAN,

                Plaintiff,

v.

MARÍA KIM GRAND,

                Defendant.

Case No. 1:18-cv-05663 (JBW)

**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

## DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant María Kim Grand ("Defendant"), by and through counsel, and for her answer to Plaintiff Steven Douglas Coleman's ("Plaintiff") First Amended Complaint (the "Complaint"), hereby states as follows:

## RESPONSE TO THE NATURE OF THE ACTION

1.      Defendant admits the allegation in Paragraph 1 of the Complaint that Defendant sent a communication ("Letter"). Defendant denies that the Letter caused any alleged damage to the Plaintiff. Defendant admits that she sent emails regarding the Letter. Defendant admits that the Letter alleged a pattern of behavior. Defendant denies that the Letter made allegations against Plaintiff. Defendant denies all allegations that her statements were "libelous," "knowingly false," "defamatory," or "false." Defendant denies all allegations as to the characterization and context of the Letter and its recipients, and to her motive in Paragraph 1. As to the remainder of the allegations in Paragraph 1, the Letter is a writing that speaks for itself.

2.      Defendant admits that the Letter contained statements regarding a pattern of behavior. Defendant denies allegations in the first and second sentences of Paragraph 2 of the Complaint that the Letter contained "false," "unsubstantiated," "untrue," "abusive," "vulgar," and "intentionally misleading" statements. Defendant further denies that the Letter made allegations against Plaintiff. Defendant lacks specific knowledge to admit or deny the allegations in the second and third sentences of Paragraph 2 that Plaintiff suffered damage or lost professional opportunities. Defendant denies that she caused the alleged damage. Defendant denies all allegations as to the characterization and context of the Letter and its recipients, and to her motive in Paragraph 2. As to the remainder of the allegations in Paragraph 2, the Letter is a writing that speaks for itself.

3.      Defendant admits that Plaintiff is not a politician as alleged in Paragraph 3 of the Complaint, but denies that Plaintiff is not a celebrity.

4.      Defendant denies the allegations in Paragraph 4 of the Complaint.

## RESPONSE TO THE JURISDICTION AND VENUE

5.      Defendant admits the allegations in Paragraph 5 of the Complaint, namely that she and Plaintiff are citizens of different states and that Plaintiff claims that the amount in controversy exceeds $75,000.00.

6.      Defendant admits the allegations in Paragraph 6 of the Complaint that this Court has personal jurisdiction over her.

7.      Paragraph 7 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, Defendant admits venue is proper in this district.

**RESPONSE TO THE PARTIES**

8.      Defendant admits the allegations in Paragraph 8 of the Complaint.

9.      Defendant admits the allegations in Paragraph 9 of the Complaint that this Court has personal jurisdiction over her but denies the characterization of her residence and "presence" in the United States.

**RESPONSE TO THE FACTS RELEVANT TO ALL CAUSES OF ACTION**

10.      Defendant admits the allegations in Paragraph 10 of the Complaint.

11.      Defendant denies the allegations in Paragraph 11 of the Complaint. Defendant further denies Plaintiff's implication that any correspondence Defendant sent to Plaintiff demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship.

12.      Defendant denies the allegations in Paragraph 12 of the Complaint.

13.      Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 13 of the Complaint. To the extent that an electronic chat exists, Defendant denies all allegations as to the characterization and context of the chat, and to her motive in Paragraph 13. Defendant further denies Plaintiff's implication that any electronic chat demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship. As to the remainder of the allegations in Paragraph 13, if it exists, the electronic chat is a writing that speaks for itself.

14.      Defendant denies the allegations in Paragraph 14 of the Complaint. Defendant further denies Plaintiff's implication that the alleged text message demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship.

15.      Defendant lacks specific knowledge to admit or deny the allegations in Paragraph 15 of the Complaint. To the extent that the Skype electronic message exists, Defendant denies all

allegations as to the characterization and context of the message, and to her motive in Paragraph 15. Defendant further denies Plaintiff's implication that the alleged message demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship. As to the remainder of the allegations in Paragraph 15, if it exists, the Skype electronic message is a writing that speaks for itself.

16.      Defendant lacks specific knowledge to admit or deny the allegations in the first sentence of Paragraph 16 of the Complaint. To the extent that the message exists, Defendant denies all allegations as to the characterization and context of the message, and to her motive in Paragraph 16 of the Complaint. Defendant further denies Plaintiff's implication that the alleged message demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship. As to the remainder of the allegations in Paragraph 16, if it exists, the message is a writing that speaks for itself.

17.       Defendant denies the allegations in Paragraph 17 of the Complaint.

18.      Defendant denies the allegations in Paragraph 18 of the Complaint. Defendant further denies Plaintiff's implication that the email demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship.

19.      Defendant admits the allegation in Paragraph 19 of the Complaint that Plaintiff and Defendant had an argument and temporarily ceased interacting around September of 2013. Defendant denies all allegations as to the characterization and context of her relationship with the Plaintiff in Paragraph 19. Defendant further denies Plaintiff's implication that events alleged in Paragraph 19 demonstrate that the Parties were engaged in a consensual, as opposed to abusive, relationship.

20.     Defendant denies the allegations in Paragraph 20 of the Complaint. Defendant further denies Plaintiff's implication that events alleged in Paragraph 20 demonstrate that the Parties were engaged in a consensual, as opposed to abusive, relationship.

21.     Defendant admits the allegation in Paragraph 21 of the Complaint that Plaintiff sponsored her for an O-1 visa for Individuals with Extraordinary Ability or Achievement but denies that Plaintiff "agreed to help" her "get sponsored" "again."

22.     Defendant denies the allegations in Paragraph 22 of the Complaint.

23.     Defendant admits the allegation in Paragraph 23 of the Complaint that she had conversations with Plaintiff's girlfriend about Plaintiff. Defendant lacks sufficient knowledge to admit or deny the remainder of the allegations in Paragraph 23. Defendant denies all allegations as to the characterization and context of the conversations, and to her motive in Paragraph 23 of the Complaint.

24.     Defendant denies the allegations in Paragraph 24 of the Complaint. Defendant further denies Plaintiff's implication that the event alleged in Paragraph 24 demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship.

25.     Defendant admits the allegation in Paragraph 25 of the Complaint that a sexual encounter occurred. Defendant denies all allegations as to the characterization and context of the encounter with the Plaintiff, and to her motive in Paragraph 25. Defendant further denies Plaintiff's implication that encounter demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship.

26.     Defendant admits that she sent an email to Plaintiff's manager on November 30, 2016. Defendant denies all allegations as to the characterization and context of the email, and to

her motive in Paragraph 26. As to the remainder of the allegations in Paragraph 26, the email is a writing that speaks for itself.

27.     Defendant denies the allegations in Paragraph 27 of the Complaint.

28.     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 28 of the Complaint. To the extent that this communication exists, Defendant denies all allegations as to the characterization and context of the email, and to her motive in Paragraph 28. Defendant further denies Plaintiff's implication that any communication demonstrates that the Parties were engaged in a consensual, as opposed to abusive, relationship. As to the remainder of the allegations in Paragraph 28, if it exists, the communication is a writing that speaks for itself.

29.     Defendant admits the allegation in the first sentence of Paragraph 29 of the Complaint that on or about May 17, 2017, she sent an email to Plaintiff. Defendant denies all allegations as to the characterization and context of the email, and to her motive in Paragraph 29. As to the remainder of the allegations in Paragraph 29, the email is a writing that speaks for itself.

30.     Defendant admits the allegation in Paragraph 30 of the Complaint that she is a founding member of the We Have a Voice Collective, but denies the characterization of this group. We Have a Voice Collective was founded in December 2017, its members are not exclusively female, it does not exclusively support female musicians, and it does not exclusively deal with sexual misconduct but also addresses issues of racism, homophobia and other intolerance and discrimination.

31.     Defendant admits the allegation in the first sentence of Paragraph 31 of the Complaint that she made Facebook posts in October 2017. Defendant denies that the posts were "veiled threats against Plaintiff." Defendant denies all allegations as to the characterization and context of the posts, and to her motive in Paragraph 31. As to the remainder of the allegations in Paragraph 31, the posts are writings that speak for themselves.

32.     Defendant admits the allegation in the first sentence of Paragraph 32 of the Complaint that she sent a text message to Plaintiff on October 25, 2017. Defendant denies all allegations as to the characterization and context of the text message, and to her motive in Paragraph 32 of the Complaint. As to the remainder of the allegations in Paragraph 32, the text message is a writing that speaks for itself.

33.     Defendant admits the allegations in Paragraph 33 of the Complaint that she corresponded with Plaintiff's wife by email and sent the Letter to her. Defendant denies all allegations as to the characterization and context of this correspondence, and to her motive in Paragraph 33. Defendant denies that the Letter contained "false" accusations. Defendant further denies that the Letter made accusations against Plaintiff. As to the remainder of the allegations in Paragraph 33, the correspondence are writings that speak for themselves.

34.     Defendant admits the allegations in the first sentence of Paragraph 34 of the Complaint that she sent an email with the Letter attached. Defendant denies the remaining allegations in the first sentence of Paragraph 34 that the Letter was sent to thirty individuals in the Parties' shared music community because it is vague and unclear what is meant by "music industry business professionals." Defendant denies that she falsely accused Plaintiff of criminal sexual acts and harassment. Defendant denies that the Letter was "crystal clear" that she was referring to Plaintiff. Defendant admits that she requested that recipients of the Letter not

forward it. Defendant denies that she caused the alleged harm in Paragraph 34. Defendant denies

all allegations as to the characterization and context of the message, and to her motive in

Paragraph 34. As to the remainder of the allegations in Paragraph 34, the Letter and email are

writings that speak for themselves.

35.     Defendant admits the allegations in the first sentence of Paragraph 35 of the

Complaint that on or about November 18, 2017, she responded to a request by Plaintiff's wife for

a copy of the Letter by sending it to her. Defendant admits that she understood Plaintiff's wife

knew the Letter was about Plaintiff. Defendant lacks sufficient knowledge to admit or deny the

allegations in the remainder of the first sentence of Paragraph 35 including whether or not

Plaintiff's wife should be characterized as "estranged." Defendant admits the allegations in the

second sentence of Paragraph 35 that she identified Plaintiff by name and requested that

Plaintiff's wife not share Defendant's communication with Plaintiff. Defendant denies that the

accusations were false. Defendant denies that she denied Plaintiff an opportunity to defend

himself. Defendant denies all allegations as to the characterization and context of the email, and

to her motive in Paragraph 35. As to the remainder of the allegations in Paragraph 35, the email

is a writing that speaks for itself. Defendant lacks sufficient knowledge to admit or deny the

allegations in the fourth sentence of Paragraph 35.

36.     Defendant denies the allegations in Paragraph 36 of the Complaint.

37.      Defendant denies the allegations in the first and second sentences of Paragraph

37 of the Complaint. Defendant denies the allegations in the third sentence of Paragraph 37 to

the extent they suggest that Plaintiff's wife was unaware of Plaintiff's behavior or believed the

Letter to be untrue.  Defendant admits that Plaintiff's wife asked Defendant to send her a copy of

the Letter.  Defendant denies that she "informed some recipients" that the Letter was about

Plaintiff. Defendant denies that the Letter was defamatory. Defendant lacks sufficient knowledge to admit or deny the fourth sentence of Paragraph 37.

38.    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 38 of the Complaint.

39.    Defendant lacks specific knowledge to admit or deny the allegations in Paragraph 39 of the Complaint. Defendant denies that any of her correspondence was defamatory. Defendant denies that she caused the damage or harm to Plaintiff alleges in Paragraph 39.

40.    Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 40 of the Complaint. Defendant denies that she published any defamatory information about Plaintiff.

41.    Defendant denies the allegations in the first sentence of Paragraph 41 of the Complaint. Defendant denies that Plaintiff attempted to resolve the matter privately. Defendant lacks sufficient knowledge to admit or deny the remainder of the allegations in the second sentence of Paragraph 41. Defendant denies all allegations as to the characterization and context of the alleged attempts to resolve the matter in Paragraph 42. Defendant further denies Plaintiff's implication that he attempted to resolve the matter in good faith, privately or otherwise.

42.    Defendant denies the allegations in Paragraph 42 of the Complaint. Defendant denies all allegations as to the characterization and context of the alleged attempts to resolve the matter, her response, and to her motive in Paragraph 42. Defendant further denies Plaintiff's implication that he attempted to resolve the matter in good faith, privately or otherwise.

43.    Defendant admits the allegation in Paragraph 43 of the Complaint that Plaintiff attended her performance on May 1, 2018. Defendant denies the remainder of the first sentence

of Paragraph 43. Defendant admits the allegations in the second sentence of Paragraph 43 that Plaintiff's attendance at her live performance was alarming and distressing to her and she requested that he be asked to leave. Defendant denies the remainder of the allegations in Paragraph 43 as to the characterization and context of her reaction to his presence, and to her motive. Defendant denies that she caused the alleged damage in Paragraph 43. Defendant lacks sufficient knowledge to admit or deny the remainder of the allegations in Paragraph 43.

44.     Defendant lacks specific knowledge to admit or deny the allegations in Paragraph 44 of the Complaint but denies any suggestion that due to her actions, Plaintiff can no longer attend public concerts "peacefully and safely."

45.     Defendant denies the allegations in Paragraph 45 of the Complaint. Defendant denies that she made any defamatory or false claims.

46.     Defendant admits the allegation in the first sentence of Paragraph 46 of the Complaint that Plaintiff sent a letter to certain persons on May 5, 2018. Defendant denies that she made defamatory publications. Defendant lacks sufficient knowledge to admit or deny the remainder of the allegations in Paragraph 46 including allegations related to Plaintiff's motive.

47.     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 47 of the Complaint. Defendant denies that she made defamatory statements about Plaintiff and denies that any statements she made directly or proximately caused the alleged damage.

48.     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 48 of the Complaint. Defendant denies that she made defamatory published statements

about Plaintiff and denies that any statements she made directly or proximately caused the alleged damage.

49.     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 49 of the Complaint. Defendant denies that she made defamatory statements about Plaintiff and denies that any statements she made directly or proximately caused the alleged pain and suffering.

50.     Defendant lacks sufficient knowledge to admit or deny the allegations in Paragraph 50 of the Complaint. Defendant denies that she made defamatory publications about Plaintiff and denies that any statements she made directly or proximately caused the alleged harm.

## **RESPONSE TO THE FIRST CAUSE OF ACTION**

51.     For her response to Paragraph 51 of the Complaint, Defendant restates all assertions, admissions, and denials stated in response to Paragraphs 1–50.

52.     Defendant denies the allegations in Paragraph 52 of the Complaint.

53.     Defendant denies the allegations in Paragraph 53 of the Complaint.

54.     Defendant denies the allegations in Paragraph 54 of the Complaint.

55.     Defendant denies the allegation in the first sentence of Paragraph 55 of the Complaint. Regarding the second sentence in Paragraph 55, Defendant denies that she made any defamatory statements and denies that she caused any such purported damage. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 55.

56.     Defendant denies the allegations in Paragraph 56 of the Complaint that she made any defamatory statements and denies that she caused Plaintiff any economic damages, including

but not limited to loss of employment opportunities and diminished willingness of colleagues to play music with Plaintiff. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 56.

57.     Defendant denies the allegations in Paragraph 57 of the Complaint that she made any defamatory statements and denies that she caused any such purported harm. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 57.

58.     Defendant denies Paragraph 58 of the Complaint. Defendant denies that she made any defamatory statements.

59.     Defendant denies Paragraph 59 of the Complaint. Defendant denies that she engaged in defamatory conduct.

60.     Defendant denies each and every allegation of the Complaint not heretofore admitted in this Answer.

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE

(Failure to State Facts Sufficient to State a Claim)

61.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

62.     The Complaint fails to sufficiently plead the elements of a cause of action for libel.

63.     The Complaint fails to sufficiently plead the elements of a cause of action for libel *per se*.

## SECOND AFFIRMATIVE DEFENSE

### (Truth)

64.     The Complaint, and each and every purported claim therein, is barred in whole or in part because all alleged defamatory statements made by Defendant are true and are subject to absolute privilege.

## THIRD AFFIRMATIVE DEFENSE

### (Substantial Truth)

65.     The Complaint, and each and every purported claim therein, is barred in whole or in part because any alleged defamatory statements made by Defendant that may happen to lack 100% factual veracity are substantially true, and thus treated as true.

## FOURTH AFFIRMATIVE DEFENSE

### (Opinion)

66.     The Complaint, and each and every purported claim therein, is barred in whole or in part because any alleged defamatory statements made by Defendant that are not true or substantially true are protected opinion.

## FIFTH AFFIRMATIVE DEFENSE

### (Common Interest Privilege)

67.     The Complaint, and each and every purported claim therein, is barred in whole or in part because all alleged defamatory statements made by Defendant were made to persons with whom she shared a common interest and are protected by qualified privilege. Defendant exclusively sent the Letter to persons who she believed shared her interest in effecting positive change in the jazz industry. Defendant purposefully did not send the Letter to anyone who she did not believe were commonly interested in the topic.

SIXTH AFFIRMATIVE DEFENSE

(Lack of Actual Malice, Qualified Privilege)

68.     The Complaint, and each and every purported claim therein, is barred in whole or in part because all alleged defamatory statements made by Defendant are protected by qualified privilege and Plaintiff fails to demonstrate actual malice.

SEVENTH AFFIRMATIVE DEFENSE

(Lack of Actual Malice, Limited Purpose Figure)

69.     The Complaint, and each and every purported claim therein, is barred in whole or in part because Plaintiff is a limited-purpose public figure and Plaintiff fails to demonstrate that Defendant acted with actual malice.

EIGHTH AFFIRMATIVE DEFENSE

(Consent)

70.     The Complaint, and each and every purported claim therein, is barred in whole or in part because Plaintiff consented to publication of the alleged defamatory statements when he solicited their re-publication. Plaintiff, by his own words and/or conduct, authorized and proactively solicited at least one news outlet to republish the alleged defamatory statements. Further republication by additional news outlets was a foreseeable consequence of Plaintiff's original solicitation of the media. Plaintiff personally and proactively republished the alleged defamatory statements on his public Facebook page on or about October 24, 2018, when he directed readers of the post to the Complaint, which attached the Letter ("October 24 Facebook Post"). Plaintiff personally and proactively republished the alleged defamatory statements on his public Instagram page when he directed readers to the October 24 Facebook Post. Plaintiff personally and proactively republished the alleged defamatory statements on his public Twitter

page when he redirected readers to the October 24 Facebook Post. Plaintiff personally and proactively republished the statements on his public Wikipedia page after successfully petitioning Wikipedia to take them down. Plaintiff's republication was completed in the manner in which Plaintiff requested, thus, consented to.

### NINTH AFFIRMATIVE DEFENSE

(General Reputation)

71. The Complaint, and each and every purported claim therein, is barred in whole or in part because Plaintiff, at the time of the alleged defamation, labored under a general reputation for compromised sexual morality and professionalism.

### TENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

72. The Complaint, and each and every purported claim therein, is barred in whole or in part because Plaintiff has failed to mitigate or reasonably attempt to mitigate his alleged damages.

### ELEVENTH AFFIRMATIVE DEFENSE

(Contribution)

73. Plaintiff's recovery for damages, if any, must be reduced in proportion to damages Plaintiff has suffered, if any, resulting from his contribution to those damages under N.Y. C.P.L.R. § 1411. Plaintiff contributed to and assumed the risk of the alleged damage he suffered, if any, when he personally and proactively: spoke about the Letter at a public event; made numerous posts on public social media accounts regarding the Letter, its contents, and this Action; caused the NY Daily news and an international publication to republish the Letter on a global scale; and republished excerpts from the Letter on his Wikipedia page.

## TWELVETH AFFIRMATIVE DEFENSE

### (Right to Add Additional Defenses)

74.　　Defendant reserves the right to assert additional defense upon discovery of further information concerning Plaintiff's claims.

## **COUNTERCLAIMS**

### COUNT I

### (Defamation of Character by Libel)

75.　　Plaintiff knowingly published numerous false statements about Defendant beginning on May 5, 2018. Plaintiff's publication of false statements is ongoing at least as recently as on or about November 3, 2018.

76.　　On May 5, 2018, Plaintiff published an email and a letter to eighty-four of Defendant's professional colleagues, friends, and close associates, falsely alleging that Defendant published false accusations against him and denying that he engaged in the behavior set forth in the Letter.

77.　　As a retaliatory action for Defendant's Letter, on May 8, 2018, Plaintiff published false statements about Defendant, individually and as part of We Have a Voice Collective, on the internet on his public Facebook page, including but not limited to, accusing her of "deliberately telling lies, and using the energy of the #metoo movement for cover, and seek[ing] revenge" and "hiding" behind We Have a Voice Collective.

78.     On June 14, 2018, Plaintiff again published false statements about Defendant to her professional colleagues, friends, and close associates in an email, including but not limited to, accusing her of "vicious" attacks and denying that he sexually harassed and intimidated her.

79.     On August 24, 2018, Plaintiff published false statements to Defendant's attorney in an email, copying his manager Sooya Wong, including but not limited to, accusing Defendant of: making "defamatory" and "almost completely false" statements about him; obscuring the "true nature of [their] intimate relationship;" manipulating both her counsel and the Parties' "many mutual colleagues;" threatening and attempting to blackmail Plaintiff; and of having a "tenuous relationship with the truth."

80.     On or around October 10, 2018, Plaintiff published a statement to the NY Daily News that, on information and belief, contained false statements about Defendant, including but not limited to, accusing her of spreading lies about him, and questioning her motives for sending the Letter. This statement was a "variation" of Plaintiff's October 24 Facebook Post, discussed below.

81.     On October 13, 2018, Plaintiff published excerpts from the Letter and false statements about Defendant on his public Wikipedia page. At a date subsequent to October 30, 2018, the post was removed from Wikipedia. On information and belief, Plaintiff personally removed or caused another party to remove the post.

82.     On October 24, 2018, Plaintiff published the 2,156-word October 24 Facebook Post. In the post, Plaintiff falsely alleged that Defendant, among other things, "covertly spread misinformation as to [his] character and the nature of [the Parties'] relationship," "deliberately

lied," "tried to ruin [his] reputation," and co-opted the #MeToo movement for her own personal benefit.

83. On or about November 3, 2018, Plaintiff redirected followers of his public account on Instagram to read the defamatory October 24 Facebook Post.

84. On October 30, 2018, in response to a comment on the October 24 Facebook Post, Plaintiff published a false statement on the internet on his public Facebook profile that Defendant was "deliberately lying," denying that the events in the Letter took place, and again accusing her of using the #MeToo movement for her own personal benefit.

85. On information and belief, Plaintiff has published additional defamatory information about Defendant in emails, text messages, social media, and other platforms, to which Defendant does not have access.

86. Plaintiff published this defamatory information without privilege or authorization.

87. Plaintiff published the false statements about Defendant with actual malice. Plaintiff knew, without question, the statements were false.

88. Plaintiff's false publications achieved their desired effect of exposing Defendant to criticism, and harming Defendant's livelihood and productivity. Defendant's professional reputation was damaged as the result of Plaintiff's defamatory statements.

89. Defendant suffered economic damages as the result of Plaintiff's defamatory statements including, but not limited to, loss of employment opportunities.

90.      Defendant suffered emotional pain and suffering as the result of Plaintiff's defamatory statements.

91.      Defendant is entitled to *per se* damages because the defamatory statements made by Plaintiff were inherently harmful, in that they addressed professionalism.

92.      Defendant is further entitled to Actual Damages, Compensatory Damages, and Punitive Damages for Plaintiff's malicious, defamatory conduct, as Defendant has been damaged in an amount to be determined at trial.

## COUNT II

### (Loss of Employment and/or Other Income)

93.      Plaintiff retaliated against Defendant by refusing to book her on "gigs" or would remove her from the "gig" when she refused to engage in sexual activity with him. As a result of Plaintiff's retaliatory actions, Defendant lost the opportunity to play at numerous concerts resulting in lost employment and wages.

94.      As a result of Plaintiff's defamatory statements to employers and potential employers, Defendant has lost the opportunity to play at past and future concerts resulting in lost employment and wages.

## COUNT III

### (Intentional Infliction of Emotional Distress)

95.      Plaintiff acted intentionally and/or recklessly when he repeatedly and continually attempted to intimidate and distress Defendant because she refused to engage in sexual acts with Plaintiff and because she wrote the Letter.

96.     Plaintiff first propositioned approached Defendant with sexual activity when she was seventeen and he was fifty-two. Plaintiff is a prominent saxophonist in the jazz community, of which Defendant is a member. Plaintiff knew that Defendant admired and respected him and desired to learn from him. Plaintiff abused his position of notoriety and seniority to manipulate Defendant into engaging in sexual acts with him in exchange for mentorship.

97.     Plaintiff knew that he held a position of authority and mentorship over Defendant. Plaintiff repeatedly used that position to punish or retaliate against Defendant when she refused to engage in sexual acts with Plaintiff. Plaintiff, among other things, manipulated Defendant emotionally, threatened her career, yelled at her, and withheld performance opportunities unless Defendant engaged in sexual activity with Plaintiff.

98.     After and as a result of Defendant writing the Letter, Plaintiff appeared at Defendant's live performances, knowing that his presence would distress Defendant, and refused to leave after being confronted by third-parties.

99.     After and as a result of Defendant writing the Letter, Plaintiff directed or otherwise caused third parties and mutual friends to repeatedly bully and threaten Defendant with public legal action. This bullying included text, Facebook, email, and voice messages. At no time did Plaintiff act in good faith to resolve this dispute through private mediation.

100.    Plaintiff's mistreatment of Defendant since the date of the Letter is a continuation of an abusive relationship that began when Defendant was a teenager seeking musical mentorship from Plaintiff, and Plaintiff, then a famous musician aged in his 50s, groomed Defendant to engage in a quid pro quo sexual relationship.

101.    Plaintiff repeatedly used his position of authority to manipulate Defendant into believing her career as a professional saxophonist was in danger if she did not acquiesce to Defendant's desire to engage in sexual acts with her.

102.    Plaintiff established a pattern of abuse and harassment when he punished Defendant for not engaging in sexual acts with him, thus manipulating her into believing that the only way to end the pattern of harassment and abuse was to engage in sexual acts with Defendant.

103.    Plaintiff's use of his position and power to manipulate Defendant into engaging in sexual acts with him and his continued harassment since Defendant wrote the Letter is extreme, outrageous, egregious, and utterly despicable conduct that has caused Defendant severe emotional distress and anxiety.

104.    Plaintiff intended to cause Defendant's severe emotional distress. Plaintiff is a prominent saxophonist in the jazz community, of which Defendant is a member. He had significant control over Defendant's performance opportunities and used that control to manipulate Defendant into engaging in sexual acts with him. In addition, Plaintiff knew that his actions taken in retaliation for after Defendant writing the Letter, as discussed above and incorporated herein, would and did cause Defendant emotional distress.

105.    As a direct, foreseeable, and proximate result of the said wrongful acts of Plaintiff, Defendant suffered fear, humiliation, shame, despair, embarrassment, mental pain, anguish, injury to her professional reputation, economic losses, all to Defendant's damage in an amount to be proven at the time of trial.

Dated: March 22, 2019

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  */s/ A. Mackenna White*
A. Mackenna White, 4799953
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: awhite@bakerlaw.com

Mark I. Bailen (NYS Bar No: 4947388)
(Admission Pending)
Email: mbailen@bakerlaw.com
Katherine L. McKnight (NYS Bar No.
4711453)
Email: kmcknight@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Avenue NW
Washington D.C. 200036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783

Attorneys for Defendant